

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EJD:SP  
F. #2024R00115

*271 Cadman Plaza East*  
*Brooklyn, New York 11201*

May 30, 2025

<u>By ECF</u>

The Honorable Nina R. Morrison  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Oshane McIntosh  
     <u>Criminal Docket No. 24-290 (NRM)</u>

Dear Judge Morrison:

   The government respectfully submits this letter in advance of the defendant Oshane McIntosh's sentencing, currently scheduled for June 18, 2025 at 2:30 p.m. On April 25, 2025, the defendant pled guilty to the sole count of the indictment, charging him with illegally reentering the United States after sustaining a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). <u>See</u> ECF Docket Entry dated April 25, 2025. For the reasons set forth below, the government respectfully requests that the Court impose a meaningful sentence that would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

I. <u>Background</u>

   A. <u>The Defendant's Prior Convictions</u>

   On March 2, 2007, the defendant was convicted of Attempted Robbery in the Second Degree – Physical Injury or Displays Firearm, in violation of New York Penal Law (N.Y.P.L.) § 110/160.10, and Robbery in the Third Degree, in violation of N.Y.P.L. § 160.05. The conviction for Attempted Robbery in the Second Degree stemmed from a February 22, 2007 incident in which the defendant and three other individuals robbed a victim at gunpoint. The defendant and three other individuals robbed the victim, a pizza deliverer, as he was making a delivery. One of the individuals held a gun to the victim's head and stole the victim's money while the defendant and the other two individuals ransacked the defendant's car looking for other items to steal. The conviction for Robbery in Second Degree stemmed from a separate incident that occurred on February 26, 2007, in which the defendant and two other individuals robbed a commercial establishment at gunpoint. The defendant pointed a gun at a cashier, ordering the cashier not to move. The defendant demanded money from the cashier and threatened to kill her

during the course of the robbery. On March 27, 2007, the defendant was sentenced in Kings County Supreme Court to three years' imprisonment for the Attempted Robbery in the Second Degree conviction and a concurrent sentence of one year imprisonment for the Robbery in the Third Degree conviction. On August 7, 2008, the defendant was ordered deported from the United States and eventually removed to Jamaica, his country of origin, on October 27, 2009.

### B. The Defendant's Conduct

On December 6, 2023, U.S. Immigration and Customs Enforcement ("ICE") learned that the defendant had reentered the United States after the defendant was arrested on December 6, 2023, in Brooklyn by the New York City Police Department for Obstruction of Governmental Administration, in violation of N.Y.P.L. § 195.05, False Personation, in violation of N.Y.P.L. § 190.23; and two other related violations.[1] The defendant was not detained during the pendency of the December 6, 2023 matter.

On July 16, 2024, the defendant was indicted by a grand jury in the Eastern District of New York and charged with one count of illegal reentry. See ECF No. 1. The defendant was apprehended on January 10, 2025 in the Southern District of Florida, where he was ordered to be transferred to the Eastern District of New York in custody. See ECF No. 5 at 7. On or about February 3, 2025, the defendant was arraigned in the Eastern District of New York before the Honorable James R. Cho, who ordered the defendant detained based on a finding that the defendant posed a risk of flight. See ECF No. 6. At the time of sentencing, the defendant will have served approximately 5 months and 8 days in custody.

### C. The Defendant's Current Immigration Status

The defendant currently has no pending appeals or other litigation regarding his August 2008 removal order. The defendant also has no other pending applications to remain in the United States. Thus, the defendant lacks any legal status to have entered or to remain in the United States.

## II. Applicable Guidelines Range

On April 25, 2025, the defendant pled guilty to the Indictment.[2] At the plea hearing, the defendant waived the Presentence Investigation Report ("PSR"). The Court made an inquiry on the record as to whether the parties disputed any facts in the case that would prevent the Court from meaningfully exercising its sentencing discretion. See Fed R. Crim. P. Note B, U.S.S.G. § 6A1.1(a)-(b), Commentary. The parties agreed that there were no facts in dispute. The Guidelines range, which is agreed upon by the parties, is calculated is below:

---

[1] This case was ultimately dismissed and sealed.

[2] The defendant did not plead guilty pursuant to a plea agreement in this matter.

|  |  |
|---|---|
| Base Offense Level (U.S.S.G. § 2L1.2(a)) | 8 |
| Plus:   Pre-removal felony conviction (U.S.S.G. § 2L1.2(b)(2)(B)) | +8 |
| Less:   Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total: | <u>13</u> |

The total offense level is 13, which, based on a Criminal History Category of III, carries a Guidelines range of 18 to 24 months in custody. At the time of sentencing, the defendant will have served approximately five months and eight days in custody.

III.   <u>Analysis</u>

The government respectfully requests that the Court impose a meaningful sentence that will be sufficient, but not greater than necessary, to achieve the goals of sentencing. <u>See</u> 18 U.S.C. § 3553(a). As the Court is aware, an appropriate sentence should, among other things, reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. <u>See</u> 18 U.S.C. § 3553(a)(2)(A). In addition, an appropriate sentence should consider the history and characteristics of the defendant, <u>see</u> <u>id.</u> § 3553(a)(1), afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. <u>Id.</u> § 3553(a)(2)(B)-(D). In weighing these factors, "a district court has broad latitude to 'impose either a Guidelines sentence or a non-Guidelines sentence.'" <u>United States v. Rigas</u>, 583 F.3d 108, 114 (2d Cir. 2009) (quoting <u>United States v. Sanchez</u>, 517 F.3d 651, 660 (2d Cir. 2008)).

As an initial matter, the nature and circumstances of the instant offense are serious. <u>See</u> 18 U.S.C. § 3553(a)(1). The defendant was ordered to be removed from the United States on August 7, 2008 after being convicted of two felonies in which innocent victims were robbed at gunpoint. These robberies were serious offenses, and the defendant committed them both within the span of just four days. As a result of his convictions, the defendant was removed to Jamaica on October 27, 2009. The defendant flouted the order of removal, and ICE learned of the defendant's illegal reentry into the United States in December 2023 after he had been arrested by the NYPD. Thereafter, the defendant's whereabouts were unknown. The defendant was ultimately located when, on January 10, 2025, Fort Lauderdale police pulled the defendant over for speeding. When Fort Lauderdale police requested identification documents from the defendant, the defendant provided a Canadian driver's license and Canadian birth certificate.[3] Based on law enforcement inquiries to Canadian authorities, both documents were determined to be fraudulent.

While the defendant's illegal reentry, in light of his robbery convictions and possession of fraudulent documents, is serious, the Court may also consider the mitigating factors put forth by the defendant in its sentencing memorandum. <u>See</u> Def. Sent'g Memo at 1-5. First, the defendant asserts that the reason he returned to the United States illegally is because his

---

   [3]   Copies of the fraudulent Canadian driver's license and birth certificate are attached herein as Exhibit 1 and 2, respectively.

mother was on her deathbed (and passed away subsequent to his return). Id. at 3. Second, the defendant describes facing significant safety concerns in Jamaica, including violence he himself suffered during a machete attack and violence inflicted on his brother, who was murdered and found at the bottom of a well. See id. at 2-3. During the immigration proceedings that led to his removal from the United States in 2009, the defendant sought protection under the United Nations Convention Against Torture, but his claim was denied. While this does not excuse the defendant's decision to reenter the United States illegally, the government agrees that these factors are appropriate for the Court's consideration in determining a just sentence. Therefore, in assessing the defendant's mitigating circumstances in conjunction with the seriousness of the offense and the need for the imposed sentence to promote respect for the law and to afford adequate deterrence, the government respectfully submits that a meaningful sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

IV.     Conclusion

       For the foregoing reasons, the government respectfully requests that the Court impose a meaningful term of imprisonment that would be sufficient, but not greater than necessary, to satisfy the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/ Stephanie Pak
Stephanie Pak
Assistant U.S. Attorney
(718) 254-6064

cc:     Clerk of Court (by ECF and E-mail)
      Charles Millioen, Counsel for the defendant (by ECF and E-mail)